Section 8, of the act of 1864, provides: "That every association formed pursuant to the provisions of this act, shall, from the date of the execution of its organization certificate, be a body corporate. * * * By such name it may make contracts, sue and be sued, complain and defend in any court of law and equity as fully as natural persons, * * * and exercise under this act all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidence of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security," etc.

Then follows, in the same act, section 57, already quoted, providing "that suits, actions, and proceedings, by or against any association under this act, may be had in any circuit, district, or territorial court of the United States within the district in which such association may be established."

To ascertain the privileges and powers conferred upon the banking associations, these sections are to be taken and construed together. It seems to me that these privileges and powers thus given in this act, are as broad and comprehensive as those given to the United States Bank by its charter, and referred to in the case of 9 Wheat. [22 U. S.].

It must be borne in mind that in the judiciary act the right to sue or be sued mainly depends upon citizenship of the parties. That corporations are only allowed to sue or be sued in the federal courts, under the act, through the legal fiction of citizenship, arising from the presumption that such corporations are citizens of the states under whose laws they are created.

These banking associations, not being created by state laws, have no state citizenship growing out of the presumed residence of the stockholders. Under the judiciary act, then, they have no power to sue in federal courts, and must, therefore, derive it from the act creating them. Having no right to sue under that act, the limitation in the 11th section as to suits upon indorsed notes and choses in action does not apply; the right to sue under that section, and the limitation thereto, go together, the one controlling the other.

If the matter of citizenship, in reference to the national banks, is dispensed with in favor of such banks, then what reason is there for the application of the limitation, as to suits on assigned paper? That limitation is only attached to enforce the privileges of citizenship and to prevent its abuse in bringing suits in federal courts. And, further, the banks, in purchasing notes, etc., only are doing what the law authorizes them to do.

I may, then, well say, as was said in the case in Wheaton, that the bank does not sue in virtue of any right conferred by the judiciary act, but in virtue of the right conferred upon it by the act of 1864, authorizing and creating it, and which constitutes its charter. The charter of the old United States Bank was but a law, as this general act is a law of the United States.

The judiciary act does not control the right and power of these banks to sue in the federal courts.

The demurrer to the petition is overruled.

## Case No. 3,063.

COMMERCIAL NAT. BANK v. SIMMONS.
[See Case No. 3,062.]

## Case No. 3,064.

COMMERCIAL STEAMBOAT CO. v. DUTTON et al.

[2 Cliff. 537.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1865.

COLLISION—VESSEL AT ANCHOR.

A schooner was at anchor in good weather, on a clear day, and in a proper place in a harbor. The master of an in-coming steamer, supposing he could pass to one side of the anchored vessel, attempted so to do, but, in the attempt, his vessel touching the bottom, swung round and collided with the anchored vessel. *Held*, the master of the steamer was at fault in acting upon his own supposition, without proper investigation, that he could thus pass the schooner, and that the steamer was liable for the damage resulting from the accident.

[Appeal from the district court of the United States for the district of Rhode Island.]

Admiralty appeal in a cause of collision. The libellants and appellees [William Dutton and others] were the owners of the schooner Adelaide, and the appellants of the steamer Falcon. The schooner was lying at anchor in the harbor of Providence, between Crook buoy and Field's point; the steamer was entering the harbor coming from New York. The day was clear, without wind. The defence was, that the schooner was in the channel, and the master of the steamer, seeing a number of vessels at anchor near the same place, supposed he could safely pass the schooner thus at anchor; but the fact was, there was not room in the channel, and the steamer touched bottom, and while endeavoring to back the steamer down the channel, she swung round (the water being so low that she would not steer) and collided with the schooner. In the district court a decree was entered in favor of the libellants. [Unreported.]

A. Payne, for appellants.

G. H Browne and N. Van Slyck, for appellees.

CLIFFORD, Circuit Justice. The collision occurred in good weather, and on a clear day, and it is plain that there must be fault

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]